■ CENTRAL SCHOOL DISTRICT No. 1 OF THE TOWNS OF SCHOHARIE, MIDDLEBURGH, CARLISLE, ESPERANCE AND WRIGHT, SCHOHARIE COUNTY; KNOX, ALBANY COUNTY; CHARLESTON, MONTGOMERY COUNTY; AND DUANESBURG, SCHENECTADY COUNTY, Respondent, v. VILLAGE OF SCHOHARIE, Appellant.— Appeal from a judgment of the Supreme Court, entered January 29, 1973 in Schoharie County, which adjudged null and void a resolution passed by the Board of Trustees of defendant village fixing water and sewer rents to be charged plaintiff, and dismissed the counterclaim for water and sewer rents for stated periods, plus penalties for late payment. On July 15, 1970, defendant's Board of Trustees, acting as the Board of Water Commissioners, adopted a resolution fixing the annual water rent for plaintiff school district at $4,000 per year, effective September 1, 1970, the effective date thereafter having been deferred for one year. Based thereon and according to a 2.85 multiple applied throughout the Village of Schoharie, plaintiff's yearly sewer rent, after the deferred effective date, was determined to be $11,400. Plaintiff's water rent has been based on a "flat rate" fixed by the Board of Trustees. In 1958, $1,200 was charged. In 1966, the rates for all water consumers were increased 25% so that plaintiff's rate became $1,500. An across the board increase of 20% in 1968 raised plaintiff's yearly bill to $1,800, which remained in effect until September 1, 1970 when the amount in dispute became applicable. In the 1969–1970 school year, the combined water and sewer bill was $3,510 when the school population was 1,575; in 1970–71, the bill was $6,930 with a population of 1,600; and in 1971–72 the bill rose to $15,400 with a population of 1,625. Defendant's Mayor, testifying as to factors considered in establishing the challenged rate, noted: an increase in school facilities over a 12-year period including 10 mobile classrooms, six permanent classrooms, a new gymnasium, cafeterias and an increased enrollment (from about 1,200 in 1958 to about 1,600 in 1970), with corresponding increases in teachers and other personnel; and an oversight in not charging plaintiff a 50% across the board rate increase in 1959. He conceded: that the board had not used the number of students as a mathematical basis in determining the new rate;

that, had plaintiff's rate been increased 50% in 1959 as was the case with all other flat rates, plaintiff would have been paying $2,700 for water in 1968; that no other flat rates except plaintiff's were raised after 1968; and that the $4,000 figure was adopted because it sounded reasonable. There was proof that water meters were installed in the school system in the spring of 1972 and, based on the average amount used during periods in which school was open and when not in session, readings indicated a yearly use of less than three million gallons. The trial court observed that, under the schedule of rates established for metered consumers, the annual water rent would be between $1,800 and $2,000. Defendant's point that its adversary was not entitled to a declaratory judgment, based on claims that the complaint sets forth numerous broad and conclusory statements without stating how the tax bill was arbitrary, capricious and discriminatory, is refuted sufficiently by the allegation that the water rent bill for the year beginning 1971 was about 125% greater than that of the previous year, while the student enrollment increased less than 4%. The proof of water meter readings taken from May through November, 1972, inclusive, after meters had been installed, was admissible as business records under CPLR 4518 (subd. [a]), the circumstances surrounding the readings being such as to affect their weight but not their admissibility. This evidence was relevant to the subject of water consumption in 1970–71 since there was testimony as to school population in the school years of 1970–71 and 1971–72 and also testimony to the effect that plaintiff's consumption was steadily increasing. The trial court had a right to find that there was no rational basis for the rate fixed in 1970 and to conclude, in the absence of any demonstrable objective standard justifying the new rate selected, that the rate was purely arbitrary and, since it applied solely to plaintiff, was discriminatory as well (cf. *Town Bd. of Town of Poughkeepsie* v. *City of Poughkeepsie*, 22 A D 2d 270, 273). Judgment affirmed, with costs. Greenblott, J. P., Cooke, Sweeney, Kane and Main, JJ., concur.